STATE v. HENRY WEINGARTH.[1]

October 27, 1916.

Nos. 19,420—(1).

**Municipal court of St. Paul — jury lists — president of common council.**

The municipal court act of the city of St. Paul (section 41, c. 351, Sp. Laws 1889), provides that the two judges of the municipal court and the "president of the common council" shall, on the last Saturday of each month, meet and select the persons who are to serve as jurors in that court during the succeeding month and until their successors are selected.

(1) Under the city charter in force since 1914, the office of "president of the common council" of the city of St. Paul does not exist. Subdivision 3, § 9411, G. S. 1913, applies, and a list of persons selected to serve as jurors, made by the municipal court judges alone, is valid.

(2) The judges of the municipal court of St. Paul may select "supplementary lists" of persons to serve as jurors in that court whenever from any cause there is a deficiency of persons qualified to serve as jurors in the original or supplementary lists.

[1] Reported in 159 N. W. 789.

When defendant was arraigned in the municipal court of St. Paul and charged with keeping an unlicensed drinking place, his attorney objected that the impaneling of the jury had not been made according to law in that the provisions of the special act creating that court had not been followed. The objection was overruled, and defendant was tried before Boerner, J., and a jury which returned a verdict of guilty. From the judgment of conviction, defendant appealed. Affirmed.

*C. B. Schmidt,* for appellant. .

*Lyndon A. Smith,* Attorney General, *James E. Markham,* Assistant Attorney General, and *Thomas W. McMeekin,* for respondent.

SCHALLER, J.

Defendant was tried by a jury in the municipal court of the city of St. Paul on the twentieth day of May, 1915, on the charge of having on the twenty-ninth of April, 1915, kept an unlicensed drinking place in that city.

The jury was drawn from names found on two jury lists, one, the "original list," made on the last Saturday of April, 1915, the other, a "supplementary list," made on the seventeenth of May, 1915. The authenticity of these lists is not questioned.

Defendant contends, first, that the lists were not properly made because the "president of the common council" of the city of St. Paul was not present with the judges of the municipal court when the lists were made, and second, that there is no authority in law by virtue of which a "supplementary list" could be made.

1. The making of jury lists and the procedure for drawing and impaneling jurors in the municipal court of the city of St. Paul are prescribed by statute. Section 41, c. 351, p. 1002, Sp. Laws 1889. It provides, among other things, that "the two (2) judges of said court and the president of the common council of the city of Saint Paul shall, on the last Saturday of each and every month, meet at the municipal court room in said city of Saint Paul, and, from the electors of said city, select and designate forty-eight (48) of said electors as the jurors of said court to serve therein when required and drawn, during the succeeding month, and until their successors are selected. * * * "The answer to the first objection is that, admitting that there is such an officer, there is nothing

in the record from which we could conclude that the "president of the common council" was not present at the time the original and supplementary lists were made up. There is nothing in the special act which requires the municipal judges or the "president of the common council" to sign or certify to the list.

Prior to the first Monday of June, 1914, there existed in the city of St. Paul a "common council," consisting of two legislative branches, each elected by the people and each presided over by a president and vice president selected by it from its membership. These two bodies selected one of their members to preside over their joint sessions. This officer was known and designated as the "president of the common council." In the absence or disability of the mayor, he was the acting mayor of the city. He had power to appoint members of the joint court house and city hall commission. Under the provisions of the charter then existing, other duties devolved upon him. The office of "president of the common council" was created by, and existed under, that charter. It was distinct and separate from the office of mayor of the city and was held and its duties were performed by a person other than the mayor.

Although the present charter provides that the mayor shall preside at the meetings of the "council," it nowhere recognizes nor alludes to a "common council" or the "president of the common council," nor does the charter create or recognize such an office. Chapter 23 of the present charter, relating to the joint court house and city hall commission, expressly strikes out the words "common council," and "president of the common council," from the original provisions, and inserts in lieu thereof the words, "council," and "mayor."

We cannot find that there was any purpose or intention to carry over into the new charter the office of "president of the common council," and must hold that the office no longer exists. It follows that the authority given to the municipal judges and the "president of the common council" must either fail altogether or be exercised by a majority of those in whom it was vested. Subdivision 3, § 9411, G. S. 1913, applies. "3. Words purporting to give a joint authority to three or more public officers or other persons shall be construed as conferring such authority upon a majority of them, unless it shall be otherwise expressly declared in the law giving the same."

2. The municipal court act of the city of St. Paul (section 3, c. 351, p. 995, Sp. Laws 1889), provides, among other things, that the court "shall have and possess all the powers usually possessed by courts of record at common law, subject to the modification of the statutes of this state applicable to courts of record. And said court is hereby vested with all powers over cases within its jurisdiction which are possessed by district courts of this state over cases within their jurisdiction; and all laws of a general nature shall apply to said municipal court so far as the same are applicable and not inconsistent with the provisions of this act. * * *"

It also provides in section 40, p. 1002, that "trial by jury in said court shall in all respects be conducted as in the district court of this state, and all laws of a general nature applicable to jury trials in said district court shall apply to said municipal court."

It is easily conceivable that circumstances might arise which would require the selection of additional persons to act as jurors in the municipal court. Unless power to make additional or supplementary lists existed, the business of the court would be handicapped and vexatiously delayed. But the intent of the legislature was not to leave the court helpless under such circumstances. Section 7972, G. S. 1913, is applicable. We quote: "And if from any cause there shall be a deficiency of persons resident in said county and properly qualified in either of such lists, such judges or a majority thereof, may, at any time designated by them, select from such qualified electors of said county other persons to cover such deficiency, * * * which supplementary or additional lists shall thereafter stand as parts of the original lists." The judges of the municipal court are the proper persons to decide whether there is a deficiency in the number of persons duly qualified, and having decided that there is such deficiency, a supplemental list may be prepared.

This disposes of the merits. The objections taken were in the nature of a challenge to the panel, a proceeding provided for by statute. See G. S. 1913, §§ 9224, 9225, 9226, 9227.

Judgment affirmed.